# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00477-SCT

*BILLY JOE TEMPLETON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/19/96 |
| TRIAL JUDGE: | HON. JOHN B. TONEY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 4/30/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/17/98 |

EN BANC.

SMITH, JUSTICE, FOR THE COURT:

¶1. Billy Joe Templeton sought a plea bargain with the district attorney to avoid the death penalty. Templeton elected to plead guilty to the murder of Martha S. Jones during the commission of burglary in violation of Miss. Code Ann. § 97-3-19(2)(e) in order to receive a sentence of life without parole. During his guilty plea hearing, Templeton admitted that he intended to commit a burglary when he entered the victim's home. He also admitted that he killed Ms. Jones while "engaged in the crime of house burglary." However, Templeton also claims that he was invited into the house by the victim. Templeton, aggrieved, now files for Post-Conviction Relief to this Court from the trial court's summary dismissal of his motion without an evidentiary hearing. Templeton argues that the trial judge erred in denying him an evidentiary hearing. Templeton also claims that his guilty plea was not knowingly and intelligently made, thus involuntary as a matter of law. He further alleges that the element of "breaking and entering" is not present because the victim invited him into her home. Finally he claims that he was denied effective assistance of counsel during his guilty plea. We combine these issues for discussion. After thorough examination we find no merit to Templeton's claims and accordingly affirm the trial court.

## I.

¶2. The trial judge could correctly rely upon the complete record before him rather than require an evidentiary hearing. The record before the Court makes clear that Templeton's intent from the beginning was to commit a burglary of Ms. Jones' dwelling house. Templeton's entry into the victim's home was gained by deceit, pretense or fraud, thus constructive breaking and entering occurred in the case at bar. The factual basis for a guilty plea may be established by the actual admission by the defendant. "Admission of guilt is not a constitutional requisite of an enforceable plea." ***Corley v. State***, 585 So. 2d 765, 767 (Miss. 1991)(Robertson, J.)*(quoting **Reynolds v. State** 521 So. 2d 914, 917 (Miss. 1988)).* Corley claimed that he advised the trial judge during a plea colloquy that "'I didn't do the shooting', and that this [was] enough to vitiate his plea." ***Id.*** at 767. Nevertheless, Corley also admitted that, "I was there." ***Corley***, 585 So. 2d at 768. Corley clearly admitted to being present while the principal co-defendant, Roger T. White, shot and killed the victim. In as much as Corley was charged as an accessory before the fact, his admission of being present when White shot and killed the victim was clearly a substantial fact that the trial judge could consider as a factual basis for support of his plea of guilt.

¶3. More to the main point of this issue is ***Davis v. State***, 611 So. 2d 906 (Miss. 1992), where this Court discussed the effect of one owner's consent to enter the premises on a burglary charge. The Court held that "[i]t would be monstrous to hold that Davis had any authority whatever to permit Brown to enter the trailer for the purpose of robbing or raping his wife, and having no such authority, his consent did not prevent Brown's entry from having been burglarious." ***Id***. at 912.

¶4. This Court also discussed the fact that a "breaking" can be actual or constructive in ***Smith v. State***, 499 So. 2d 750 (Miss. 1986). The Court cited ***State v. Jolly***, 297 N.C. 121, 254 S.E.2d 1 (1979) wherein the North Carolina Supreme Court defined breaking as " '. . . any **act** or force, however, slight, 'employed to effect an entrance though any usual or unusual place of ingress, whether open, partly open, or closed.'" ***Smith***, 499 So. 2d at 752. (emphasis added). "The [North Carolina Supreme Court also] noted that a breaking could be actual or constructive" and defined constructive as entry "obtained in consequence of violence commenced or threatened by defendant." ***Id.*** at 752-53.

¶5. Similarly, in ***Alford v. State***, 656 So. 2d 1186 (Miss. 1995), this Court stated "[a]ny effort, however slight, such as the turning of a door knob to enter, constitutes a breaking, . . .." ***Alford***, 656 So. 2d at 1190. Additionally, in an earlier case this Court quoted Corpus Juris Secundum for the proposition that constructive breaking can occur where an entry is effected by fraud or intimidation. ***Holderfield v. State***, 215 Miss. 564, 570, 61 So. 2d 385, 386 (1952). ***Accord State v. Fuller***, 296 S.E.2d 871 (S.C. 1982) (holding that entry effected by trickery or deception constitutes a constructive breaking and satisfies the breaking element in the definition of burglary); ***State v. Ortiz***, 584 P.2d 1306 (N.M. Ct. App.1978) (where consent to enter is obtained by fraud, deceit or pretense, the consent is erroneous and is similar to constructive breaking and constitutes an unauthorized entry sufficient to sustain a burglary conviction).

¶6. Even assuming that Templeton's account of the events is true, his act of gaining or enticing an invitation into the Jones' home meets the definition of "breaking and entering" that this Court has followed in previous cases. If the act of turning a door knob constitutes an act or effort sufficient to constitute a "breaking," then surely the act of gaining or enticing an invitation into someone's home with the ultimate intention of committing a burglary once inside, likewise constitutes an act or effort

sufficient to constitute a "breaking." We hold that the effort involved in Templeton's **act** of gaining or enticing an invitation takes more effort, manipulation, incitement, deceit, pretense, etc. and in my view is as fraudulent, if not more fraudulent, than turning a door knob or simply crossing the threshold of someone's front door without the invitation.

¶7. Consequently, where Templeton admits that he intended to commit a burglary upon entering the house, the fact that he may have been invited into the house becomes irrelevant because, as demonstrated by the previously cited cases, there was clearly a constructive breaking. We hold that constructive breaking is present where the invitation is gained by deceit, pretense, or fraud. Inasmuch as an owner would not knowingly grant someone permission to enter his house with the intent to commit the crime of burglary, much less the crime of murder, as was ultimately committed by Templeton in the case at bar, Templeton's entry was obviously gained by deceit, pretense or fraudulent means. As in *Davis*, here it would be monstrous to think that Ms. Jones granted Templeton permission to enter her home for the purpose of committing a burglary, and certainly would not have invited him in had she known he would kill her. Although in the case at bar it's not clear how Templeton induced the supposed invitation, nevertheless, regardless of the circumstances surrounding Templeton's entry into the house, the fact that he admittedly possessed the intent to commit a burglary and entered the house by an invitation induced by deceit, pretense, or fraud, fulfills the elements of burglary.

## II.

¶8. Templeton claims that his counsel was ineffective. "Trial counsel is presumed to be competent." *Brooks v. State*, 573 So. 2d 1350, 1353 (Miss. 1990). Templeton is required to overcome that presumption. To do so, Templeton must meet the two-prong criteria of *Strickland v. Washington, 466 U.S. 668 (1984)*. He must demonstrate first, that his attorney's performance was deficient. Second, Templeton must show that counsel's deficient performance prejudiced his defense. The burden is on Templeton to demonstrate both prongs of *Strickland*. *McQuarter v. State*, 574 So. 2d 685, 687 (Miss. 1990). Obviously, Templeton's decision to plead guilty was one of trial strategy to negate the possibility of receiving the death penalty. His PCR pleadings contain a statement by his sister allegedly told to him to wit: "Mama's about to have a heart attack worrying about you getting the Death Penalty." The record reflects that trial counsel's overall performance was not deficient and was constitutionally competent and totally lacking of any prejudice to Templeton.

¶9. Templeton's claims that he was mentally confused and he felt that he had no choice but to plead guilty are without merit. Templeton advised the trial judge that he was not on drugs or alcohol, was not undergoing any mental treatment and that he knew what he was doing. The trial judge extensively covered this subject. Templeton appeared to know what he was doing, what he was saying, and the ramifications of his plea. He admitted that he entered the victim's home with the intent to commit a house burglary once inside. Trial counsel assured the judge that at all times Templeton had been able to aid and assist in his defense. There is no merit to this claim.

¶10. This is simply another case of the story changing drastically from the version Templeton, under oath, told the trial court judge during his original plea hearing. Templeton was represented by an extremely qualified and competent defense attorney. The bottom line here is that, at one time or the other Templeton was obviously lying. This new version claiming that Ms. Jones was an old girl friend

and that he was merely defending himself from her initial attack upon him with a knife was not convincing to the trial judge who had considered Templeton's plea under oath. Trial judges are entitled to place great weight upon a defendant's initial plea under oath. Here, the trial court who originally accepted the plea, apparently placed great weight upon Templeton's truthfulness at that time, but from the entire record before him on PCR, obviously did not find this new version by Templeton to be worthy of belief.

¶11. Where the record and Templeton's prior sworn testimony on their very face belie his claim, an evidentiary hearing is not required. *Harris v. State*, 578 So. 2d 617, 620 (Miss. 1991). This Court in *King v. State*, 679 So. 2d 208, 211 (Miss. 1996), highlighted the importance of prior sworn testimony taken during guilty pleas by stating, "We must also take note of the emphasis which trial judges may place upon a defendant's prior representations under oath during guilty pleas." In addition, this Court in *Mowdy v. State,* 638 So. 2d 738 ( Miss. 1994) held:

> There should be a strong presumption of validity of anyone's statement under oath. However, we are now faced with one statement or the other not being the truth. . . . "Where the petitioner's version is belied by previous sworn testimony, for example, as to render his affidavit a sham we will allow summary judgment to stand."

*Mowdy*, 638 So. 2d at 743 (quoting *Harris v. State*, 578 So. 2d 617, 620 (Miss. 1991). Also, this Court in *Smith v. State*, 636 So. 2d 1220, 1224 (Miss. 1994), held:

> In contrast, Smith's current contentions and credibility are certainly suspect. When we compare his previous sworn testimony during his guilty plea with his current affidavit, the latter is practically rendered a "sham," thus allowing the summary dismissal of the petition to stand. *See Harris v. State*, 578 So. 2d 617, 620 (Miss. 1991). At one time or the other Smith has obviously committed perjury, which may warrant appropriate actions by a grand jury. *See Sanders v. State,* 440 So. 2d 278, 289 (Miss. 1983) (Roy Noble Lee, J., specially concurring).

*Smith,* 636 So. 2d at 1224.

¶12. The trial judge here, as in *Smith* and *Mowdy,* was correct in his judgment in refusing to vacate Templeton's plea and sentence. Based upon the entirety of the record before him, the trial court was entitled to place a strong presumption of validity upon Templeton's prior admission under oath where he pled guilty. Templeton's claim now amounts to a mere "sham". We find no merit to any of Templeton's claims. Templeton is required to serve the sentence of life without parole that he sought by way of a valid plea bargain, an agreement by which he successfully avoided the death penalty.

## CONCLUSION

¶13. Templeton was not entitled to an evidentiary hearing. The trial judge was entitled here to rely upon the complete record and make such determination in dismissing Templeton's claims summarily. Templeton appears to have made a reasonable tactical and strategical choice for pleading guilty because he in fact was guilty of the crime charged and by doing so avoided the possibility of a death penalty. Templeton's motion for post conviction relief was properly denied and the trial court is affirmed.

¶14. **DENIAL OF POST-CONVICTION RELIEF AFFIRMED.**

**PRATHER, C.J., ROBERTS, MILLS AND WALLER, JJ., CONCUR. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS AND McRAE, JJ. PITTMAN, P.J., NOT PARTICIPATING.**

**SULLIVAN, PRESIDING JUSTICE, DISSENTING:**

¶15. I agree with the majority that Templeton has failed to make a convincing argument for unknowing and involuntary guilty plea due to ineffective assistance of counsel. However, the transcript of his plea hearing reveals that there was no factual basis established to support his guilty plea to the underlying charge of burglary. Therefore, I must respectfully dissent with the majority regarding Issue II in this case.

**II.**

**WHETHER A SUFFICIENT FACTUAL BASIS WAS ESTABLISHED FOR THE TRIAL COURT TO ACCEPT TEMPLETON'S GUILTY PLEA.**

¶16. Templeton contends that the trial court failed to establish a sufficient factual basis to support his guilty plea. Particularly, he argues that there was not enough evidence to prove the underlying offense of burglary, and that Mr. Tabb prompted his answers as if he were prosecuting the case. Rule 3.03(2) of the Mississippi Uniform Criminal Rules of Circuit Court Practice states, "Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea." U.C.R.C.C.P. 3.03(2). Judge Toney and Mr. Tabb questioned Templeton at his plea hearing to determine whether there was a sufficient factual basis for accepting his guilty plea on the charge of capital murder during the commission of burglary:

> THE COURT: Why did you stop at this particular house where the Joneses lived?
>
> THE DEFENDANT: I really can't tell you.
>
> THE COURT: Did you know anyone was home?
>
> THE DEFENDANT: (No response).
>
> MR. TABB: Did you know anyone was home at the time?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: Okay. Now, tell me then, what happened as you approached the house. I assume you were by yourself?
>
> THE DEFENDANT: Yes, sir.
>
> . . . .
>
> THE COURT: Okay. Tell me then what happened as you approached the house.

THE DEFENDANT: Uh, the kids were outside, and I asked if their mother was home. And they said yes. And so I walked up on the steps, *and she invited me in.* And we talked a few minutes, and then I really--

MR. TABB: When you went in the house, did you intend to commit a house burglary?

THE DEFENDANT: Yes.

MR. TABB: And did you then subsequently kill her?

THE DEFENDANT: Yes, sir.

Further questioning by Judge Toney disclosed that Templeton was high on crack cocaine and carrying a buck knife which he used to stab Ms. Jones one time before leaving the house. No other witnesses were called to establish a factual basis for Templeton's guilty plea.

¶17. The elements of burglary of a dwelling are: 1) breaking and entering a dwelling, and 2) with the intent to commit a crime. Miss. Code Ann. § 97-17-19 (1994) (repealed 1996). Templeton's account of the events leading up to Ms. Jones's murder lacks the element of breaking and entering. Instead, he told the court that she invited him in. The majority concludes that there was a constructive breaking, because Templeton must have gained entry by deceit, pretense, or fraudulent means. However, the record simply does not support such a finding, and the majority therefore relies on mere supposition in reaching its conclusion. Based upon the factual basis actually presented at Templeton's plea hearing, the trial court should not have accepted Templeton's guilty plea to the charge of capital murder with burglary as the underlying felony.

> [A] factual basis is an 'essential part of the constitutionally valid and enforceable decision to plead guilty.' ***Reynolds***, 521 So.2d at 915. *This factual basis cannot simply be implied from the fact that the defendant entered a plea of guilty*. ***United States v. Briggs***, 920 F.2d 287, 293 (5th Cir.1991). Rather, there must be an evidentiary foundation in the record which is 'sufficiently specific to allow the court to determine that the defendant's conduct was within the ambit of that defined as criminal.' ***United States v. Oberski***, 734 F.2d 1030, 1031 (5th Cir.1984). Unless courts are satisfied that such a factual basis exists, they are admonished not to enter judgment on a plea of guilty.

***Lott v. State***, 597 So.2d 627, 628 (Miss. 1992) (emphasis added). The evidence before the court did not provide a sufficient factual basis for a plea of guilty to capital murder. I would reverse Templeton's conviction and sentence and remand his case for further proceedings.

## CONCLUSION

¶18. The transcript of Templeton's plea hearing reveals that there was an insufficient factual basis to support his guilty plea to the underlying charge of burglary. As a result, I believe that the trial court erred in accepting Templeton's plea of guilty to capital murder. I would reverse Templeton's conviction of capital murder and sentence of life imprisonment without possibility of parole, and remand this case to the Rankin County Circuit Court for further proceedings.

**BANKS AND McRAE, JJ., JOIN THIS OPINION.**